So we'll proceed with argument on the first case, MSP Recovery Claims v. Hereford Insurance Company. And we have Mr. Zincone, who's reserved two minutes for rebuttal. You can begin whenever you're ready. Good morning. May it please the Court. I'm Francesco Zincone of Armistice Borough of Trans-Zincone, and I represent MSP Recovery Claims, Series LLC, the appellant and the plaintiff below in this case. This appeal concerns Article III standing, and more specifically, what is required to allege injury in fact and traceability. The plaintiff here seeks to recover money paid and owed by the defendant under the requirements of the Medicare Secondary Payer Act, which is 42 U.S.C. Section 1395YB. The district court dismissed the plaintiff's claim under the MSP Act under Rule 12b1 exclusively. In doing so, the Court's analysis strayed from the modest requirements of Article III and impermissibly conflated standing with the overall merits of the action. To sustain the approach advanced by the approach advanced by the- I wanted to ask you sort of a preliminary question. You know, we have another case pending in the court, Aetna Life Insurance v. Big White Foods. And as I understand it, the issue in that case is whether there's a private cause of action on behalf of an MAO. Would that case dispose of this case depending on which way it comes out? That is correct, Your Honor. There is the Aetna Big White case places at issue specifically the question of whether or not a Medicare Advantage organization may avail itself of the private cause of action under the MSP Act. That is one issue that has been raised in this appeal by the defendants. Is standing an issue in the other case? Standing is not an issue in that case. It is purely a question of statutory standing in that instance, which really is a question of the merits of the underlying action. So although it does potentially bear on this case, what I would say is that in our view, that question is not properly before the court in this appeal. It would certainly have an impact on this case if it were to go down back to the district court. But if that panel would have ruled there was no private cause of action, then this appeal would be over, right? This appeal would be effectively disposed of. There are no alternative accounts that are presently fled in this action. So they are interconnected in that respect. On the issue of causation, I think, as you know, the key issue is whether, and you can correct me if I'm wrong, the only allegation on which you rely for your claim that Hereford is a primary payer who owes the money is the report to CMS. I don't think there's anything else in the complaint that would establish that, right? So with respect to the exemplar claim, which is the NG claim, there are more allegations present in the complaint than simply the issue of reporting. Yeah, but that's all related to the treatment and, yeah. As to the core issue, which is whether or not they are the primary payer that would owe the money, it's based upon the report. It is based in part upon the report. But really, the allegation is that the specific policy, which is fled in the complaint, we give the policy number under which these particular treatments were covered, is alleged. So that contract and that no-fault contractual obligation is what renders the defendant in this case a primary payer. That's no-fault obligation as defined. No, but that's not necessarily true because the other exemplar, AB, you withdrew that claim because that beneficiary also happened to have workers' compensation, and therefore Hereford didn't owe the money, right? But ultimately, in those circumstances, that is a question potentially of the merits of the underlying action. But what we do have with respect to NG, which is the only claim that continues to be at rest- And say, we think they may owe on all of these. We don't know if there's any other insurance companies out there that would turn out to be the primary payer. But we're just going to sue them and see what happens. Isn't that essentially what would be done then? No, I'm not certain that I understand the court's position on that. What we have here is a- You're saying that they have a no-fault policy, and therefore they may owe. They put in this report, it's possible they owe. But beyond that, I'm not sure I understand. It is possible that they owe, yes. But also, it is plausible that they owe under those circumstances because of particularly what we have identified in the papers regarding the nature of these reports. Did you respond at all to the Rubin Affidavit, to the statements made in the Rubin Affidavit that no claim was submitted? I mean, we look at standing challenges both from a facial and a factual perspective. And it seemed to me that under our format we've set up in Carter, that given the submission of the Rubin Affidavit, you had an obligation to respond to negate those allegations. But I didn't see any response. Did I miss something? There is not an affidavit which is posited in connection with our response. However, although an affidavit was provided by the defendants in connection with their motion to dismiss, the only time that a factual challenge would be properly lodged is if the facts that are raised within that affidavit are in fact material and relevant to the question of Article III standing. Why is it material and relevant that they say that no claim was ever submitted? That suggests that the claims, in fact, that you are relying on were not reimbursable to your client. It suggests a defense which may ultimately be raised by the defendant under the statute. We're talking about standing, though. I mean, we're talking about whether there was an injury in fact. And if there was no claim that was reimbursable here, that means your client wasn't injured, doesn't it? With respect to injury in fact and causation, there are two separate issues in our view that are going on here. There is an Article III standing test for which general allegations of injury traceable to defendant is sufficient to satisfy. That's what was done, and the court actually found that the defendant's misconduct was reasonably traceable that the plaintiff had made a payment which was not reimbursed by the defendant. That's a finding that's actually in the order in the causation section of the ruling. Now, then it went on as to whether or not the defenses that have been raised, which is precisely what Your Honor is referring to, may ultimately bear on whether these particular services are reimbursable. One defense that the defendant is going to raise in a preview for summary judgment is that the New York statute, no-fault statute, sets up certain requirements that the defendant is able to use as a defense to paying this particular claim. How can there be a claim if no claim was ever made? What we have is the MSP Act, and the MSP Act, it's important to understand that this exists independently. This is an independent federal statutory scheme intended to make sure that primary payers reimburse, in the first instance, Medicare and Medicare Advantage. A primary reports to CMS, that does not mean that it is liable. It's not acknowledging liability. Is that correct? It is evidence that the defendant in the case, but that the insurer has reviewed the claim and accepted coverage. You're making what sounds more like opposition to a 12B6 motion. There is evidence, what's plausible, but we're on a subject matter. We are on a standing motion, an article. And so we're not, we should look beyond the allegations of the complaint, can't we? Beyond the allegations of the complaint, but only to the extent that they are relevant to Article III standing, not the merits of the claim. And the claim here is that there is overlapping coverage that the plaintiff's assigner, a Medicare Advantage organization, made a payment. It was subject to overlapping coverage from the defendant. The defendant had notice of the claim, had constructive notice, which is exactly the standard. Do you really need discovery to get more details? Couldn't you, through Emblem Health, find out everything you need to know to make this a more concrete claim? Or am I missing something? Can't Emblem Health give you everything you need to know to answer some of these questions? The question that Judge Carney asked you about why there's only a claim for October 20th, nothing for the 14th or the 18th. The question I asked you is whether or not there's other coverage out there for this beneficiary, maybe workers' compensation. All that information you could get through Emblem Health, right? This is precisely the reason that the statute is set up the way that it is. Because Emblem Health, as a Medicare Advantage organization, would not necessarily have that information readily available. It has to pay a claim when it comes in the door. Under the governing regulations, 41131, it has to pay a clean claim within 30 days, subject to potential penalties. So it pays in the dark. It may have to pay immediately, but it can get that information, right? It can't go to the beneficiary and say, hey, we need you to give us this additional and fill out this form. We need some more information. They can't, Emblem Health can't do that. It could, but what would the response rate be? We don't know. What we do have here is that the federal government and Congress has seen fit to establish a structure, a statutorily mandated structure through reporting where these entities are supposed to be communicating with each other in order to ensure that these payments are being reimbursed. And so you have that set out in the statute. All right. I'm sorry. I think I've gone over my time. I was asking a question. You reserve your two minutes for the follow-up. Thank you. All right. We'll now hear from Mr. Curley. Good morning, Your Honors. May it please the Court. Michael Curley. I represent Hereford Insurance. I'd like to start with the last part of this conversation, which is when an insurance company notifies CMS it has received a claim. There was an implication by the appellant here that by virtue of notifying CMS, there was somehow evidence that there was an opportunity for that claim to have merit. If you read the statute, the sole trigger for notifying CMS is not the merits of the claim. It is the status of the claimant. That and that alone triggers coverage upon pain of $1,000 a day for failure to do so. Therefore, merely notifying CMS that there is- The status of claimant means what? The status of the claimant meaning they're a Medicare beneficiary or enrolling in an MAO. That they have eligibility under whatever circumstance, be it end stage renal failure, social security disability or age, that they have an eligibility. And therefore, that immediately triggers, under the statute, the obligation to notify CMS. So the concept that that- There was an actual payment, is that more evidence that there is coverage or liability? Your Honor, that gets to my second point, and that is this. That no fault is a statutory program very similar to workers' compensation. The mere fact that a policy exists doesn't necessarily mean that there is an eligibility for payment. You have to differentiate between the concept of a primary plan, which an insurance company would be, and a primary payer, which is the obligation to pay a specific claim. As we set out in our brief, there are over- Judge Chin's question, if your client paid $2,000, right, I think that's the- Isn't that the amount that was paid of the 9,000 or my- Something in that regard, yes, Your Honor. Does that make it more likely that they are in fact a primary payer because they paid $2,000? In a general sense, yes, but not in a specific sense. And by this, I mean this, Your Honor. No fault, like comp, each payment is a separate claim within the policy. And we outlined very specifically how no fault works. Would there be a circumstance where the first part should be paid, but not necessarily the second part? Yes, Your Honor, or vice versa for that matter. We set out in our brief- Give me an example of why there would be a difference in coverage. All right, so a medical bill has to be submitted- First of all, there has to be a notice of claim within 30 days or a legitimate excuse. Then for any medical treatment, the bill has to be submitted within 45 days of that treatment. Otherwise, it can be denied. In addition, even if you have the treatment and submit the bill, the no fault carrier, just like a comp board, has the opportunity to say, we think this is unnecessary, we think that it did not serve a legitimate medical purpose, or was excessive and can deny on that basis. Therefore, prompting the claimant under those circumstances to go to another source. And this is all set out in the regulations. If you look at 411.51 and 411.53, it outlines how no fault works. And the obligation is on the claimant in no fault to comply with the provisions of the no fault program in whatever state they reside. And in this case, since there wasn't a bill submitted, there was nothing for Hereford to pay. Had it been submitted after 45 days, they could have denied it. So you're relying on facts that are set forth in the Rubin Affidavit, right? That is correct. Yeah, so are we entitled to look at those now? I mean, they're not distinctly opposed, I guess, with a counter affidavit, but we still have a low standard on establishing standard at the motion to dismiss stage, don't we, at a 12-week motion? There is certainly a reduced standard, Your Honor, but there is a standard. And that standard is you have to demonstrate the plausibility of your claim. Nobody ever tried to refute, nor can they for that matter, refute what Mr. Rubin said in his affidavit, which they never got the claim that they're seeking payment for. Still, why is it enough? I think your adversary is arguing that we're getting kind of into the merits of whether there was a loss and how much it would be and so on. At this stage, they've alleged that Hereford was a primary, that an accident occurred, and that very proximate time frame injuries occurred and were treated, and therefore there were claims, the persons of Medicare claimant, and that ought to be enough to get them at this stage with this very low bar to a later stage of the proceeding. Why is that wrong? Your Honor, that is, to my way of thinking, an attempt to rewrite the insurance law of the state of New York, which the courts in Caldera, which is a comp case but very similar because the programs are similar, the courts have deferred to the programs that exist within the state for these types of benefits. You have to at least be able to demonstrate some measurable compliance, which they haven't. All they've alleged is we have an injury, they reported that they received a claim, therefore they owe us money. That is not enough. You have to demonstrate plausibility. You have to demonstrate and be able to plead with particularity or at least sufficient particularity some measure of compliance with the statutory program that exists within the state. And if you can't do that, you don't rise to the level of having standards. You haven't meeting the standards. You haven't shown an injury in fact, and therefore this complaint was properly dismissed for that reason. So you would say the nature of the claim, even though at a very superficial level it might look like established injuries, is just fundamentally incompatible with the relevant insurance regimes. Is that about right? Your Honor, you said that better than I ever could. It's exactly right. But we would be deciding on narrower grants. If we relied on the affidavit, we wouldn't be addressing this more general argument about whether the reports, the filing of the reports was sufficient or not to have standing, right? We've seen in this particular case the affidavit, which was not rebutted, shows that there was no injury here, right? Right, Your Honor. That is exactly correct, but you cannot disregard the exemplar that they would like you to ignore. Right. Which is a demonstration that there wasn't, that Hereford, no fault, was not the primary payer under any circumstance. Plus, Your Honor, the sole underpinning of this, as you brought out during the appellant's argument, was essentially that they rely on the fact that if there's a report to CMS that they've received a claim, it is somehow prima facie proof that they owe something, and that's not true. Well, I mean, I know there are cases, the Seventh Circuit case and a whole bunch of district court cases that- The Eleventh Circuit case. Yeah, the Eleventh Circuit seems to disagree with you, and I know you try to distinguish it, but it's about notification as opposed to standing, but the language, especially the Metro decision, the ACE decision, and then it was the Metro decision more recently, seems to support this idea that the filing is knowledge and an obligation to pay, right? It is knowledge of a claim. Listen, for me it's not distinguishable. I think you just think it's wrong, right? It's not really distinguishable. No, it's not distinguishable, but I think it goes beyond the plain reading of the statute, which says the trigger for the filing is the status of the claimant as a Medicare beneficiary or an enrollee in an MAO. That's what the statute says. It doesn't say that there's any legitimacy to the claim. It merely indicates that you've gotten a claim, you've identified this person as a beneficiary, and therefore you must, under penalty of $1,000 a day, report that claim to CMS. And it says nothing more than that. So the phrase is entitled to benefits under the program under this subchapter on any basis? That's correct. So your adversary says that it doesn't make sense to construe it so broadly, and that really the report requirement is entitled or is aimed at allowing Medicare to go after entities that owe it money. What purpose is served by reading it as broadly as you do? Reading it as narrowly as I do, you mean? As broadly, to mean that the report means that the claimant is covered by Medicare and nothing more. Why does Medicare need that information? Because, especially in the liability circumstances, Your Honor, this is a significant issue, because an individual in a personal injury lawsuit can recover their medical expenses as part of the case, and Medicare and MAOs are entitled to recover that if they've paid it from the party that was legally responsible for the injuries. There's every reason in the world to have the reporting requirement there, but there's no reason to extend it far beyond its scope for the purposes of manufacturing what we consider to be a very broadly based and unsupported lawsuit. What about the argument that this is going to thwart the whole ability to enforce under the MSP Act, that without discovery they can't get the information that they would need to establish what you're suggesting is required by standing? What's your response to that? My response to that, Your Honor, is that Emblem Health, as you pointed out, remember this is an assinee of an entity that accumulated 75 or 100 claims. Emblem Health, the real party who made the payment, would have every opportunity to investigate this and every opportunity to reach out directly to Hereford and see whether or not there was a claim filed. You are dealing with an assinee of 75 or 100 claims that only shows this court two things. First, it shows the court that there was a filing, and second, it shows the court that there were medical payments. It never connects anything else. It never connects any level of compliance, and that information can reside with the assinee who on an individual basis from claim to claim would have the opportunity to determine whether or not they're entitled to a recovery. All right. Thank you very much.  Thank you. With respect to the first point regarding the triggering event for reporting, although the defendant in this case has referred frequently to Section A under 1395YB8, it has often been left out, Section C, 1395YB8C, which governs the timing for issuing these reports. It states, and I'd like to read it to the court, information shall be submitted under subparagraph A-2 within a time specified by the secretary after the claim is resolved through a settlement, judgment, award, or other payment. Under the circumstances. But it says right after that, regardless of whether or not there's a determination or admission of liability. That suggests that it can still be open, but so long as the claimant is covered by Medicare, a report must be made. We have explained that particular language in the papers, and CMS has explained it as well most recently in Chapter 7 of the Medicare User Manual, which is the guidance that primary plans are supposed to use regarding reporting. What is the explanation? The explanation is that regardless of whether or not there's a determination or admission of liability. It is because as is customary in the context of settling personal injury claims, it is often the case that a settling defendant will disclaim liability or admission of liability. And as a result, CMS and Congress. But it also happens that a payor may not be liable. No. Under the circumstances, if a defendant enters into a settlement that resolves bodily injuries, it has an obligation at that point. The responsibility to pay is demonstrated. This is not a settlement. This is just a claim. Money was paid out. Money was paid out here, which other means and other payment, that's exactly what we have here. And so the issue is what is the type of trigger event for an obligation to reimburse under the MSP Act? And it has been found by the 11th Circuit in Baxter, and it's been carried forward in ACE, that that, and I would like to say it's also been echoed by Health and Human Services when they filed an amicus brief in the ACE case, a brief that it is entitled to skid more deference under this court's precedent. It states that the triggering event is constructive knowledge. It has always been constructive knowledge, and it is not. It would upend the purpose of the statute, which places an affirmative duty on defendants to make sure that Medicare is paid at the time in the first instance. It would upend it to shift the burden back to the secondary payer to Medicare to be searching out alternative coverages, overlapping coverages, and requiring them to give notice to the defendant in the first instance. No such notice is required. Constructive notice here is established by the defendant's own admissions. As Judge Chin referenced, there was a payment here. That payment, in fact, in the record is admitted to be $10,000 on the underlying bodily injury claim. It was made timely. That is also referenced in the affidavit that was filed in connection with the motion to dismiss. And at that moment, the defendant in this case had constructive knowledge. It knew about the Medicare status of the individual. It knew about the nature of the injuries. There's an admission that the person had suffered the precise types of injuries that the person had incurred. And at that point, everything was available to the defendant, as was referenced in Western Heritage. I think we have the arguments. That's okay. So we're going to reserve decision. Thank you both for coming in. Have a good day.